Caruthers, J.,
delivered ’ the opinion of the Court.
Lewis Stover made his Will in 1852, which was attested by but one witness. He devised most of his land to his wife, for life, and remainder to his six sons, including *559 John Stover. At some time afterwards, the word six was obliterated, and five inserted, and “ John Btover ” was expunged, without the substitution of any other name. When this was done, or by whom, does not appear. But the Will remained in his possession, and codicils were added, which make it clear that it was done by him, and the object of it made manifest.
On the 7th of March, 1857, he made a codicil, in which several provisions are contained; and among others, that the part of the land to which his son John was entitled in remainder, should include his . spring, etc. All this is erased, and the word “six” also altered to five, as in the original Will. This codicil is attested by two witnesses.
Afterwards, on the 6th of April, 1857, he adds these words, on the same sheet of paper, below the first codicil: “In addition to what I have written, I declare my will and desire, that my son, John Stover, be made void, and has no share in my land; and my reason for so doing is, I do not believe it safe in his hands, for at times, it seems, that he is not sane. I will that his son, Nicholas L. Stover, have an equal share of my land, with my five sons, when he is twenty-one years of age.”
This is signed, under seal, by the testator, and attested by only one witness.
This shows clearly, not only the time, and by whom made, but the object of the erasures and obliterations in the original Will, and the first codicil.
The original Will, and the first codicil, but not the second, were pi-opounded for probate, and the same were contested by Kendall and wife.
Various questions arose on the trial. The jury found *560 in favor of the "Will and codicil,. and that -.the erasures of the words “six” and “John Stover,” were not intended as a revocation of that part of the Will, but that the obliteration of the clause in the codicil, by which 'the part of John, in the land, was designated, was intended as a revocation of that part of the same.
1st. The original Will was not good as to the land, for want of tivo subscribing witnesses. But the codicil of March, 1857, was properly attested, and that operated as a re-publication of the original Will, with the proper attestation. Every- codicil is, in construction of law, a part of a man’s Will: 1 Williams, on Ex., 175, and note x, in which the authorities are all cited.: also, 3 Hump., 286. So, although the Will of 1852, was not so attested as to be a good devise of real estate, yet the codicil of March, 1857, being properly attested, cured the defect, and made the original Will as operative as if it had been attested by two witnesses, in conformity- to the A ct of 1784.
2nd. Was the finding of the jury, under the instructions of the Court, in relation to the obliterations and erasures, correct? We think it clear that the change of his intention, as to his son, John, as evinced by the ineffectual attempt to give the one-sixth of the land to his grandson, Nicholas, in April, 1857, was the cause of the cancellations in question. That was, doubtless, the time the erasures were made; and the object was to carry out that purpose. But this failing, for want of the proper attestation of the codicil, then made, the revocation cannot take effect, but the Will must remain as it was, before the cancellation.
Obliterations and interlineations are inoperative to *561 change a Will, if made with a view of making a different disposition, which is not effectually carried out. So, if such change of purpose is not carried out, because of sudden death, or any other cause, or the attempted disposition is invalid, the cancelling of the first, being dependent thereon, is null, and does not effect the revocation of the original Will, but it will stand as it was before the cancellation. In 1 Has., 143, Sir John Nuhall says: “ That such cancellation being preparatory to the deceased making a new Will, and conditional only, was not a revocation.” In 1 Williams, on Ex., and notes, this doctrine is fully sustained. If the new disposition fails, for want of proper attestation, the effect is the same, according to these authorities. The jury was, therefore, correctly instructed on this point.
The codicil of April, 1857, fails for want of the attestation of two witnesses. Consequently, the former disposition, without regard to the obliterations, must take effect, as the only object for which they were made, wasto make a new and different disposition, and that, though attempted, has proved ineffectual.
There was then no error in the charge of the Court, and the finding of the jury, and the judgment will be affirmed.